# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

PAUL J. ALVES, ANTHONY L., SCOTT M. BARBATO,
DONNA B. BARBIERI, BART J. BARNHOORN, KAREN
E. BIEGAS, PAUL L. BLASETTI, JR., MARIO S.
BOCCIA, DAVID A. BOSCARINO, DEBORAH M.
BRYAN, JOHN J. CARPINO, MICHAEL A. CARPINO,
PATRICIA A. CASTRECHINO, DANIEL J. CATHRON,
MICHAEL CIARPELLI, DWAYNE CUNNINGHAM,
ELAINE CUNNINGHAM, PATRICK V. DESIATO,
MICHAEL P. DONOGHUE, DAWN MARIE EHRHARDT,
TERRY R. FOLTS, DOUGLAS A. FOSTER, MAUREEN
A. FOSTER, SCOTT M. HAYES, SHARON L. HAYES,
PAULA KAISER, DANIEL E. KOHLER, CHRISTOPHER
M. LARKIN, ROBERT E. LAURINI, MARK W.
LEBRITON, JEFFREY S. LICATA, SUN H. LIM,
ROSARIO C. LOBRUTTO, LOUIS J. LONGO, JAMES F.
MCCABE, II, NICHOLAS MARCHIOLI, JR., EMILIO
MUSCIANESE, RONALD J. OESCHGER, GARY S.
PALERMO, ANTHONY PALMERI, PATRICK D.
PANCIONE, JOSEPH P. PARINA, WILLIAM B.
PENNINGTON, JOSEPH PILATO, MICHAEL A.
REIDOSH, JOHN RISTICH, JUTTA RODRIGUES,
JOANN V. ROSS, JAMIE SAIEVA, DARRYL A. SMITH,
BORIS TRAJKOVSKI, ANTONINO SORCI, LARRY D.
THOMAS, GUY M. VITO, LISA
WALBRIDGE-BOSCARINO, GARY J. WHITEHAIR,
VINCENT ZAGARI,

DECISION AND
ORDER
07-CV-6079-CJS

                                        Plaintiffs,


                        -vs-


VALEO ELECTRICAL SYSTEMS, INC., IUE-CWA
AUTOMOTIVE CONFERENCE BOARD, AND IUE-CWA
LOCAL 509,

                                        Defendants.

**APPEARANCES**

For Plaintiffs:                          Andrew P. Fleming, Esq.
                                         Chiacchia & Fleming, LLP
                                         5113 South Park Avenue
                                         Hamburg , NY 14075
                                         (716) 648-3030

For Valeo Electrical Systems, Inc.:      Andrew W. Bagley, Esq.
                                         Thomas P. Gies, Esq.
                                         Crowell & Moring
                                         1001 Pennsylvania Avenue, N.W.
                                         Washington, D.C. 20004
                                         (202) 624-2672

                                         James C. Holahan, Esq.
                                         Bond Schoeneck & King, PLLC
                                         345 Woodcliff Drive Suite 208
                                         Fairport, NY 14450
                                         (585) 362-4722

For IUE-CWA Automotive Conference
Board, and IUE-CWA Local 509:            Matthew J. Fusco, Esq.
                                         Chamberlain, D'Amanda, Oppenheimer &
                                         Greenfield, LLP
                                         1600 Crossroads Building
                                         Two State Street
                                         Rochester, NY 14614
                                         (585) 232-3730

**INTRODUCTION**

This action was brought by Plaintiffs, represented employees of Valeo Electrical

Systems, Inc. ("Valeo"), against Defendants, Valeo and IUE-CWA Automotive Conference

Board and IUE-CWA Local 509 (collectively "the Union"), alleging violations of Section 9(a)

of the National Labor Relations Act, 29 U.S.C. § 159(a) and Section 301 of the Labor

Management Relations Act, 29 U.S.C. § 185. More specifically, Plaintiffs  contend that

Defendants collectively breached the implied duty of fair representation in the course of

contract negotiations;  that Valeo breached the collective bargaining agreement ("CBA") by wrongfully laying off represented employees without regard to seniority; and that the Union  failed to grieve Valeo's alleged breach. The matter is before the Court on Valeo's and the Union's motions seeking dismissal of the complaint in its entirety for failure to state a cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(6), and also seeking dismissal of certain causes of action as barred by the statute of limitations. For the reasons stated below, with the exception of Valeo's motion to dismiss the Second cause of action against it, the applications are denied.

## FACTUAL BACKGROUND

As is required in deciding the motions, the Court assumes the allegations in the complaint are true and draws all reasonable inferences in favor of the non-moving party. First, all 57 plaintiffs were members of IUE-CWA Local 509 ("Local 509") and were employees of Valeo. (Compl. ¶¶ 5-61.) Both of the unions are labor organizations, and Local 509 along with IUE-CWA Automotive Conference Board ("National") were the bargaining representatives of Plaintiffs, pursuant to a CBA between the Union and Valeo effective from August 14, 2000, through July 31, 2008. (Compl. ¶ 65.) Valeo is

> a foreign business corporation authorized to do and doing business in the State of New York, with its principal place of business located at 3000 University Drive, Auburn Hills, Michigan and its local place of business maintained at 1555 Lyell Avenue, Rochester, New York 14606. At all times material to this claim VALEO was and is engaged in an industry substantially affecting interstate commerce within the meaning of Section 501 of the NLRA.

(Compl. ¶ 62.) The following allegations are reproduced verbatim from the complaint:

> 66. In or around July 2000, VALEO and the UNION entered into a collective bargaining agreement (hereinafter "2000 Contact") wherein VALEO agreed to keep approximately 1,750 jobs at the Rochester plant through July 31, 2008, at which point the contract would be renegotiated.

67. In 2002, VALEO and the UNION negotiated to reduce VALEO's active workforce by implementing various attrition programs. Additionally, UNION members consented to various concessions from their 2000 Contract, including giving up an annual raise and increasing their share of health insurance costs, among other things.

68. Thereafter, on or around July 26, 2005, VALEO announced that it was closing its Rochester plant as of August 1, 2008. Upon information and belief, LOCAL 509 knew at the time of the 2002 negotiations that VALEO would be closing its plant. Upon further information and belief, LOCAL 509 did not inform its members of VALEO's intentions to close the plant in order to secure the foregoing concessions which would not have been, upon information and belief, approved had the members known the plant would be closing.

69. Thereafter, the UNION and VALEO engaged in negotiations over the effects of the plant closing in 2008.

70. Upon information and belief, VALEO instructed a few LOCAL 509 officials to create a plan to close the plant. Upon further information and belief, VALEO instructed said LOCAL 509 officials to make the plan cost-neutral, in other words, the plan to close the plant could not cost the company more than keeping the plant open.

71. Defendant LOCAL 509 prepared a "Pension proposal," dated August 19, 2005, that included as part of the calculation for retirement eligibility, all employee service that would be earned through July 31, 2008 -the final day that the plant was projected to be open.

72. As a result, the July 31st service date allowed approximately thirty-five (35) additional UNION members and VALEO employees, who would not have earned eligibility by the first of the month (*i.e.*, July 1, 2008) but who would have earned said eligibility by August 1, 2008, to become eligible for full retirement benefits under the CBA, including continued healthcare and sub-pay following his/her attrition, layoff or retirement date.

73. The aforementioned thirty-five (35) individuals are commonly known as a group as the One Tenth people, inasmuch as each is allegedly missing approximately "one tenth" of the employment service time necessary to earn and keep full retirement benefits, some by as little as one day.

74. However, Defendant LOCAL 509 negligently engaged in the collective bargaining negotiations leading to ratification of the 2005 MOA by failing to include said One Tenth persons in the proposed monetary calculation of said

Pension proposal that was submitted to management, which was cost-neutral.

75. Upon information and belief, LOCAL 509's calculation of the Pension proposal was cost-neutral because LOCAL 509 stripped approximately 187 members of their retirement health care coverage and sub-pay in order to subsidize approximately 313 other members' full retirement with retirement health care coverage and sub-pay, which included various LOCAL 509 officials.

76. Management accepted the Pension proposal and concluded negotiations.

77. However, despite including One-Tenth members in the Pension proposal, the cost of the One-Tenth members was negligently excluded from the calculation of the proposal and, therefore, the One-Tenth members are now being denied their full retirement benefits by VALEO.

78. One-Tenth members, including many Plaintiffs herein, grieved this decision, however, IUE-CWA UNION acknowledged the error by LOCAL 509, however, on or about August 31, 2006, Defendant IUE-CWA rejected the grievance and refused to go to arbitration because an arbitrator "might be inclined to put the parties back to the bargaining table to negotiate for the additional benefits" for those approximate thirty-five (35) One-Tenth members.

79. Meanwhile, on or around September 17, 2005, the UNION and VALEO reached a tentative memorandum of agreement (hereinafter "tentative MOA") wherein the Defendants agreed to various attrition programs designed to layoff significant numbers of VALEO employees before the 2008 plant closing and which drastically slashed retirement benefits for VALEO employees, including Plaintiffs herein. At the time of the tentative MOA, the UNION had approximately 500+ active members.

80. Specifically, prior to the tentative MOA, the CBA provided that each member upon retirement, including Plaintiffs, would receive 95% sub-pay in the event of unemployment, his or her full pension, together with and, most importantly, continued health care benefits for life.

81. In stark contrast, however, the attrition programs provided that many members, including Plaintiffs herein, would receive no sub-pay upon lay-off, a reduced monthly pension upon retirement and receive no healthcare coverage during the course of their retirement.

82. The UNION, did, however, provide that some members would be eligible for a full retirement benefit, including sub-pay upon lay-off and continued healthcare coverage during the course of retirement.

83. Upon information and belief, the UNION arbitrarily created service requirements to allow these members to retire with a full pension. For example, the UNION granted a full pension to all Tier I employees, but selected only a handful of Tier II to be eligible for same - a result which allowed, upon information and belief, at least two UNION officials to achieve full pensions that each otherwise would not have been eligible for.

84. Moreover, and upon information and belief, UNION officials are retiring with a greater pension benefit than they would if they had actually achieved thirty years of service with the plant. Upon further information and belief, the Tier II members selected by the UNION to receive a full retirement will be receiving a pension based on thirty years of service, despite the fact that each Tier 11 member has only twenty-five years of credit.

85. On or around September 21, 2005, the UNION distributed to its members, including Plaintiffs herein, a summary booklet (hereinafter "Booklet") outlining the tentative MOA.

86. The Booklet, in part, specifically states on page 2 that:

> The current contract is kept intact until July 31, 2008 . . . The only changes to the agreement are listed on the following pages.

87. The Booklet did not describe or mention any changes to the seniority provisions and requirements of the CBA. Moreover, the actual written tentative MOA was not provided to UNION members, including Plaintiffs herein, until after same had already been voted on.

88. The UNION is a seniority shop and the CBA clearly provides that any reduction in force by VALEO, including layoffs, can only be implemented in order of least senior employees to most senior employees.

89. The UNION, on or around September 25, 2005, four days after distributing the Booklet, held a meeting wherein the tentative MOA was ratified, upon which it officially was adopted as a Memorandum of Agreement (hereinafter "2005 MOA").

90. During the ratification meeting, the UNION informed the One-Tenth members (including many of the Plaintiffs herein) that the disputed coverage (July 31, 2008 service date) would be pushed for by the UNION at a later time, while reassuring them that they would get the full benefits.

91. One-Tenth members, including some of the Plaintiffs herein, opposed the ratification of the tentative MOA and voted against same. However, of those UNION members voting at the ratification meeting, approximately 3,000 were retired UNION members and members who were already out as part of the 2002 attrition programs, but who were no longer active employees working in the plant.

92. Upon information and belief, subsequent to August 24, 2005 but prior to the ratification vote, the UNION induced retired UNION members, including those mentioned above, to vote in favor of the 2005 MOA by deliberately misrepresenting to said members that their retiree benefits, namely their pensions and healthcare coverage, were in jeopardy unless they did so.

93. Moreover, and upon information and belief, LOCAL 509 made a trivial change to said retired members' healthcare in order that said members could appear and vote on the ratification.

94. Upon further information and belief, the UNION deliberately misrepresented same to retired UNION members in order to ratify the 2005 Agreement which was to the significant benefit of various UNION officials, and to the detriment of Plaintiffs.

95. As a result of the ratification of the MOA, the approximately thirty-five One Tenth members, including some of the Plaintiffs herein, were erroneously penalized full retirement benefits, including sub-pay and continued healthcare coverage for life.

96. The 2005 MOA did not alter or replace the seniority provisions and requirements set forth in the CBA.

97. Following the ratification, UNION members, including Plaintiffs herein, were encouraged to sign up for the attrition program for which they were eligible. The UNION warned that failure to sign up would have dire consequences.

98. Thereafter, VALEO began selecting employees for attrition, a process commonly referred to as "tapping."

99. VALEO, however, in violation of the seniority provisions and requirements of the CBA, began "tapping" employees out of order of seniority, including (a) allowing less senior employees to continue working while more senior employees were tapped, and (b) placing less senior employees on lay-off status while allowing said employees to collect sub-pay (compensates the employee the difference between unemployment and 95% of his/her wages) and continue to receive healthcare coverage, while more senior employees were laid off with no sub-pay benefits and no continued health care coverage, among other things.

100. On different occasions, the Plaintiffs have attempted to file grievances with the UNION regarding VALEO's (a) deliberate failure(s) to abide by the seniority provisions and requirements of the CBA; (b) arbitrary and capricious determinations allowing some employees to reclassify their seniority to avoid attrition; (c) tapping employees prior to reaching their eligibility date(s); and (d) changing some of the employees' eligibility service dates from August 1, 2008 to July 31, 2008 to allow said employee to collect a full retirement, among other things.

101. The UNION has refused to grieve same.

102. Upon information and belief, the UNION proposed and negotiated a plant closing plan that was in the best interests of (a) UNION officials, (b) a portion of UNION members, instead of creating and negotiating for a fair and equal plan designed to provide all members with a maximum benefits. Upon further information and belief, UNION officials negotiated for certain benefits and perks for themselves, including but not limited to, an excessive number of UNION personnel working unlimited over-time hours, and 10% shift differentials, all in violation of the 2000 Contract and further despite the fact that the plant does not employ enough active workers to sustain the need for same.

103. The foregoing actions and failures to act have damaged the Plaintiffs in that each of the Plaintiffs, once tapped, will immediately and permanently lose (a) all wages and employment benefits from VALEO, including health care coverage and sub-pay; (b) the ability to continue contributing to his/her 401(k) and/or pension program; and (c) the ability to receive a greater pension and/or 401(k) benefit at retirement, among other things.

104. All administrative remedies prerequisite to this action have been exhausted or waived.

**STANDARDS OF LAW**

*Motion to Dismiss*

The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted).  *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000).  On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur*

*Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) (*citing In re American Express Co.*

*Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

**Duty of Fair Representation**

Section 301 of the National Labor Relations Act, 29 U.S.C. § 185, permits employees

to sue the labor organization that represents them. As the Supreme Court stated in *Ford*

*Motor Co. v. Huffman*, 345 U.S. 330 (1953):

> The National Labor Relations Act, as passed in 1935 and as amended in
> 1947, exemplifies the faith of Congress in free collective bargaining between
> employers and their employees when conducted by freely and fairly chosen
> representatives of appropriate units of employees. That the authority of
> bargaining representatives, however, is not absolute is recognized in *Steele*
> *v. Louisville & N. R. Co.*, 323 U.S. 192, 198-199, in connection with compar-
> able provisions of the Railway Labor Act. Their statutory obligation to repre-
> sent all members of an appropriate unit requires them to make an honest
> effort to serve the interests of all of those members, without hostility to any.
> *Id.*, at 198, 202-204; *Tunstall v. Brotherhood of Locomotive Firemen*, 323 U.S.
> 210, 211; *Brotherhood of Railroad Trainmen v. Howard*, 343 U.S. 768.

*Huffman*, 345 U.S. at 337.

The duties of a bargaining agent selected under the terms of the Act extend beyond

the mere representation of the interests of its own group members. By its selection as

bargaining representative, it has become the agent of all the employees and is charged with

the responsibility of representing their interests fairly and impartially. *Wallace Corp. v.*

*NLRB*, 323 U.S. 248, 255 (1944). In construing comparable provisions of the Railway Labor

Act, the Supreme Court wrote,

> Without attempting to mark the allowable limits of differences in the terms of
> contracts based on differences of conditions to which they apply, it is enough
> for present purposes to say that the statutory power to represent a craft and
> to make contracts as to wages, hours and working conditions does not
> include the authority to make among members of the craft discriminations not
> based on such relevant differences.

*Steele v. Louisville & N. R. Co.*, 323 U.S. 192, 203 (1944).[1]

As to a plaintiff's burden of proof with respect to a claim for breach of the duty of fair representation, the Second Circuit, in *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465 (2d Cir. 1999), explained:

> It is well-established that a union has a duty to represent fairly all union members in the negotiation of a collective bargaining agreement. *See Spellacy* [*v. Airline Pilots Association-International*], 156 F.3d [120] at 126 [(2d Cir. 1998)] (*citing* [*Air Line Pilots Ass'n v.*] *O'Neill*, 499 U.S. 65, 74, 111 S. Ct. 1127, 113 L. Ed. 2d 51). This duty "is implied under the scheme of the National Labor Relations Act." *White v. White Rose Food*, 128 F.3d 110, 113 (2d Cir. 1997) (*citing DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983)). "A union breaches its duty of fair representation if its actions 'can fairly be characterized as so far outside a wide range of reasonableness…that [they are] wholly arbitrary, discriminatory, or in bad faith.'" *Spellacy*, 156 F.3d at 126 (alterations in original) (*quoting O'Neill*, 499 U.S. at 67). Bad faith requires a showing of fraudulent, deceitful, or dishonest action. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992).

*Sim*, 166 F.3d at 472. In *Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of America v. Lockridge*, 403 U.S. 274 (1971), the Supreme Court observed that in order to establish a claim of a breach of the duty of fair representation through bad faith,

> [the plaintiff] must have proved "arbitrary or bad-faith conduct on the part of the Union." *Vaca v. Sipes*, 386 U.S. 171] *supra*, at 193 [1967]. There must be "substantial evidence of fraud, deceitful action or dishonest conduct." *Humphrey v. Moore*, *supra*, 375 U.S. [335], at 348 [1964].

*Lockridge*, 403 U.S. at 299.

### Hybrid Claims & Limitations Period

In *White v. White Rose Food*, 128 F.3d 110 (1997), the Second Circuit addressed the situation where an employee brings a hybrid claim against the union and the employer.

---

[1]*Steele* dealt with race discrimination.

The court wrote:

> Under federal labor law, an employee may bring a complaint against her union and/or her employer alleging (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer. *See DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163-64, 103 S.Ct. 2281, 2289-91, 76 L.Ed.2d 476 (1983); *Vaca v. Sipes*, 386 U.S. 171, 184-86, 87 S.Ct. 903, 913-15, 17 L.Ed.2d 842 (1967). Section 301 of the Labor Management Relations Act, 1947 (the "LMRA"), 29 U.S.C. § 185, governs the employer's duty to honor the collective bargaining agreement, and the duty of fair representation is implied under the scheme of the National Labor Relations Act (the "NLRA"). *See DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290-91; *see also Price v. International Union, United Auto. Aerospace & Agric. Implement Workers*, 795 F.2d 1128, 1134 (2d Cir.1986) (union's duty of fair representation is implied from § 9(a) of the NLRA, 29 U.S.C. § 159(a), specifically). The limitations period on this "hybrid § 301/DFR" action is six months, *see DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2293, which begins to run when the employee knew or should have known of the breach of the duty of fair representation, *see Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir.1995); *King v. New York Tel. Co.*, 785 F.2d 31, 33 (2d Cir.1986). The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both. *See DelCostello*, 462 U.S. at 165, 103 S.Ct. at 2291.

*White*, 128 F.3d at 113-14.

## ANALYSIS

### *Limitations Period*

In seeking dismissal of the first cause of action against it, Valeo relies on *Lorance v. AT&T Technologies, Inc.*, 490 U.S. 900, 911 (1989), in which the Supreme Court held that the time to bring a challenge against a union for creating a facially neutral seniority system through an agreement begins to run on the date the agreement is signed. However, the Court's research shows that the result in *Lorance* was changed in the 1991 Civil Rights Act to allow an employee to challenge a discriminatory seniority rule "'when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person

-12-

aggrieved is injured by the application of the seniority system or provision of the system.'"

*Stender v. Lucky Stores, Inc.*, 780 F. Supp. 1302, 1305, n.11 (N.D. Cal. 1992) (*quoting* 1991

Civil Rights Act § 112); *accord*, *Davila v. New York Hosp.*, 813 F. Supp. 977, 979, n.2

(S.D.N.Y. 1993) ("Section 112 overturns the decision in *Lorance v. AT&T*"); *Smith v. Petra*

*Cablevision Corp.*, 793 F. Supp. 417, 419, n.3 (E.D.N.Y. 1992) ("Section 112 overturns the

decision in *Lorance v. AT&T*"). In that regard, as the Ninth Circuit observed in *Hulteen v.*

*AT&T Corp.*, 498 F.3d 1001 (9th Cir. 2007):

> In 1991, Congress amended the Civil Rights Act to make it clear, if *Pallas* had
> not already done so, that an employer who adopts a seniority system for an
> intentionally discriminatory purpose commits an unlawful employment practice
> "when the seniority system is adopted, when an individual becomes subject
> to the seniority system, or when a person aggrieved is injured by the
> application of the seniority system or provision of the system." Civil Rights Act
> of 1991, Pub. L. No. 102-166, 105 Stat. 1071, 1078-79(Nov. 21, 1991). Cong-
> ress thus clarified that injury occurs at the time that the seniority system is ap-
> plied to the aggrieved party because that is when the employee is actually
> harmed by the deprivation of benefits. *See* 42 U.S.C. § 2000e-5(e)(2). As the
> House Report accompanying the amendment noted, this amendment was
> intended to "overrule[ ] *Lorance* and permit[ ] person[s] to challenge
> discriminatory employment practices when those practices actually harm
> them." H.R. REP. NO. 102-40, pt. II, at 3 (1991), reprinted in 1991
> U.S.C.C.A.N. 694, 695.

*Hulteen*, 498 F.3d at 1011. The Second Circuit, in *White*, applied the six-month limitations

period, which they held begins to run when the employee knew or should have known of the

breach of the duty of fair representation. *White*, 128 F.3d at 115. In the case at bar, the six-

month limitation period started to run for each employee when he or she knew that Valeo

was tapping[2] employees for attrition not based on reverse seniority. Thus, the Court rejects

---

[2]"Tapping" is explained in the complaint as, "selecting employees for attrition...." (Compl.
¶ 98.)

Valeo's contention that the accrual date was the ratification of the 2005 Memorandum of Agreement ("MOA") between the Union and Valeo. (*See* Valeo Mem. of Law, at 9.)

This action was filed on December 21, 2006. From the face of the complaint, on August 31, 2006, the Union rejected the One-Tenth Plaintiffs' grievances. (Compl. ¶ 78.) "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir.1998). Since the affirmative defense of the statute of limitations[3] does not appear from the face of the complaint, the Court rejects Valeo's argument that the lawsuit is barred.

For the same reasons, the Court denies the Union's statute of limitations ground for dismissal of Plaintiffs' fourth cause of action against it. The union argues that Plaintiffs knew of the results of the Union's processing of the one-tenth grievance in March 2006, thus, were required to bring their causes of action by September. The Court rejects this argument in light of the holding in *Hulteen*, 498 F.3d at 1011, discussed above.

### Valeo's Alternative Basis for Dismissal—The Release of Claims

Alternatively, Valeo argues that the hybrid claims against it are barred, since all Plaintiffs signed releases. In support of this argument, Valeo has provided a copy of each plaintiff's signed release form. If this were a summary judgment motion, Valeo's contention

---

[3]"In certain situations, the statute-of-limitations defense may be raised in a motion to dismiss when the running of the statute is apparent from the face of the complaint. *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 119 (9th Cir. 1980). Yet such a motion to dismiss should be granted "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980))." *Vernon v. Heckler*, 811 F.2d 1274, 1278 (9th Cir. Cal. 1987)

might carry the day.[4] However, since the Court is limited in a pre-answer 12(b)(6) motion to the four corners of the complaint and the documents referenced in the complaint, it must reject Valeo's argument, without prejudice to renewing it at an appropriate time. As the Court of Appeals has stated, "[f]or purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference…and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the complaint." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citation omitted). Although the complaint mentions that each plaintiff was "encouraged to sign up for the attrition program for which [he] was eligible" (Compl. ¶ 97), the Court does not find that this reference is sufficient to rule that the release of claims papers are incorporated into the complaint.

### First Causes of Action against Valeo and the Union

In the First cause of action against Valeo, Plaintiffs allege that the company failed or refused to "tap employees, including Plaintiffs, in order of inverse seniority from least senior to most senior" in violation of the CBA. (Compl. ¶ 106.) The factual allegations that support this claim are in paragraphs 97 through 100. In the First cause of action against the Union, Plaintiffs contend that the Union, in a discriminatory manner, failed and refused to protest and grieve Valeo's wrongful practices of:

> (a) tapping employees, including Plaintiffs, out of order of seniority in violation of the CBA; (b) altering employees' service dates to be July 31, 2008 instead of August 1, 2008; (c) allowing some employees to change job classification in order to remain working while others are denied that option; and (d) tapping employees before they reach their eligibility date in violation of the 2005 MOA, among other things.

---

[4]Plaintiffs have argued that the waivers are invalid in light of the Union's alleged misrepresentation of the contents of the MOA. (Pls.' Mem. of Law, at 11.)

(Compl. ¶ 111.) Plaintiffs' complaint incorporates the 2005 MOA, but does not attach a copy of it. Since it appears that the complaint relies on the 2005 MOA and that Plaintiffs' counsel had a copy of the same in preparation of the complaint, the Court will consider it as incorporated into the complaint and will consider its contents for the purpose of deciding the Union's motion.[5] *See, Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

The 2005 MOA provided that the CBA would remain in effect until its expiration on July 31, 2008, except as modified in the MOA. (MOA ¶ I.) The MOA kept the Retirement Acceleration Program ("RAP") under the CBA effective for those employees, "who, by July 31, 2008, are within five years from eligibility for a retirement…under the CBA terms." (MOA ¶ I.A.1.b.) The MOA then set out a Special Layoff provision (MOA ¶ I.A.1.c. & d). It made it possible for employees to volunteer to be laid off and receive some, but not all, retirement benefits (MOA ¶ I.A.1.f.i.1), but provided that if an insufficient number volunteered, those who did not would be "laid off in inverse order of seniority before reaching the eligibility for the five-year RAP." (MOA ¶ I.A.1.f.i.1.) A similar provision was made for those not eligible for the five-year RAP, but who would be within seven years of retirement on July 31, 2008. (MOA ¶ I.A.1.f.ii.) Further, the MOA provided that,

> [a]ll active employees who are not eligible for immediate retirement during the course of the 2000-2008 CBA: these employees may waive their rights to the five-year RAP (if eligible) or the seven-year Special Layoff (if eligible) and accept a one-time attrition incentive payment as set forth below.

(MOA ¶ I.A.1.f.iii.) The second portion of the MOA discussed implementation and made the

---

[5]The Court also notes that although Plaintiffs objected to the Court's consideration of several of the exhibits presented by both the Union and Valeo, they did not object to consideration of the 2005 MOA. (Fleming Aff. ¶ 4.)

procedures for reduction in force voluntary, but stated that if an insufficient number of employees volunteered, layoffs would proceed in inverse seniority order. (MOA ¶ I.2.b.)

The Union argues that employees had a choice—they could volunteer for the RAP and leave Valeo under the conditions of that program, or they could remain at work and be laid off in inverse order of seniority. (The Union's Mem. of Law, at 12-13.) Defendants contend that departure under the RAP or the Special Layoff would only occur when an employee volunteered for those options.

While the Court acknowledges that the MOA's provisions were voluntary, the allegations in the complaint simply allege that Valeo began selecting employees for attrition without regard to the CBA, and do not indicate whether those employees had voluntarily accepted the benefits provided for in the MOA or the 2002 RAP agreement (Compl. ¶ 67). Defendants chose to move under Rule 12(b)(6), which limits the Court to considering the four corners of the complaint and documents incorporated by reference. Consequently, the Court disagrees with Defendants' position that the claims in the First causes of action against Valeo and the Union are implausible. Paragraph 97 of the complaint mentions that employees were encouraged by the Union to sign up the attrition program, but neither that paragraph, nor the remaining paragraphs of the complaint, allege that the employees chosen for attrition by Valeo were part of the MOA or the 2002 agreement on attrition. Thus, the only conclusion to be drawn from the allegations in the complaint is that Valeo started tapping employees for attrition in violation of the CBA. (Compl. ¶¶ 98-99.)

Further, when these employees grieved this alleged violation of the CBA, the Union failed to follow through. (Compl. ¶ 101.) Although during the argument of these motions, Defendants contended that those chosen for attrition were volunteers under one of the

attrition programs, that information is not in the complaint. Accordingly, the allegations in the complaint support an inference that the Union acted in an arbitrary manner, or in bad faith. Since Defendants chose to bring motions under Rule 12(b)(6), and the Court has not converted the motions to ones for summary judgment, the Court denies the motions to dismiss the First causes of action against Valeo and the Union.

**Second Cause of Action Against Valeo**

In the Second cause of action against Valeo, Plaintiffs allege that the company breached the 2005 MOA by "refusing to recognize One-Tenth members as eligible for full retirement benefits under the 2005 MOA." (Compl. ¶ 133.) The One-Tenth members are described as 35 employees who,

> would not have earned eligibility by the first of the month (*i.e.*, July 1, 2008) but who would have earned said eligibility by August 1, 2008, to become eligible for full retirement benefits under the CBA, including continued healthcare and sub-pay following his/her attrition, layoff or retirement date.

(Compl. ¶ 72.)

The factual allegations that support Plaintiffs' Second cause of action against Valeo are primarily in paragraphs 71 through 78 and 90 through 95. Paragraph 95 specifically contends that, "[a]s a result of the ratification of the MOA, the approximately thirty-five One Tenth members, including some of the Plaintiffs herein, were erroneously penalized full retirement benefits, including sub-pay and continued healthcare coverage for life." (Compl. ¶ 95.) However, this allegation, while explaining who was penalized by the 2005 MOA, does not support the conclusion that Valeo violated the MOA, the basis for the Second cause of action against the company. Accordingly, the Court fails to find any support in the factual allegations for the claim that Valeo violated the 2005 MOA.

***Second Cause of Action Against the Union***

In the Second cause of action against the Union, Plaintiffs claim that the Union "by distributing a misleading and cursory Booklet only four (4) days prior to the ratification vote, failed to accurately represent to and inform its members of the provisions of the tentative MOA, including those portions which the Defendants may now claim modified the seniority provisions and requirements of the CBA." (Compl. ¶ 117.) The Union concedes that some information was not included in the Booklet given to members about the 2005 MOA prior to its ratification vote. (The Union's Mem. of Law, at 12-13.) However, they contend that the missing information was unchanged from the 2002 RAP agreement. (*Id.*)

As with the 2005 MOA, the booklet, though referenced in the complaint, is not attached. However, the Court will consider it on this motion, since it is referenced and since it clearly appears that Plaintiffs had the booklet when writing the complaint.

Plaintiffs allege in the complaint that the booklet stated, on page two, that "[t]he current contract is kept intact until July 31, 2008…. The only changes to the agreement are listed on the following pages." (Compl. ¶ 86.) Further, they allege that, "[t]he Booklet did not describe or mention any changes to the seniority provisions and requirements of the CBA. Moreover, the actual written tentative MOA was not provided to UNION members, including Plaintiffs herein, until *after* same had already been voted on." (Compl. ¶ 87 (emphasis in original).) Four days after distributing the booklet, the Union held a meeting where the MOA was ratified and adopted. (Compl. ¶ 89.) Plaintiffs further argue:

> There is no agreement between the parties that Valeo had the unfettered right to lay-off out of order of seniority under the 2005 MOA. Further, even if Valeo would have had such a right under the language and provisions of the 2005 MOA, such language should not control inasmuch as that is not the language that was contained in the booklet reviewed and relied upon by the Union members in anticipation of the ratification vote.

(Pls.' Mem. of Law, at 17.)

The Court notes that on page five of the booklet (attached as Ex. D to Fusco Aff.), the representation is made that, "[l]ayoffs will be done in inverse order of seniority, except skilled trades where skilled trades' entry date will determine reductions." The MOA provides, however, that "Management retains the sole discretion to determine employees specific departure dates." (MOA ¶ I.A.2.c.)

Plaintiffs have alleged that misrepresentations were made in order to benefit Union officials. In that there is some basis for the allegation that the booklet was misleading and that the Union acted in an arbitrary, or discriminatory fashion, or in bad faith, *Spellacy*, 156 F.3d at 126, the claim is plausible and may go forward.

### Third Cause of Action Against the Union

In the Third cause of action against the Union, Plaintiffs allege that:

121. The tentative MOA reached by the UNION and VALEO was to the detriment of approximately 183 employees: Approximately 170 employees were ineligible to receive a full pension, would receive no sub-pay and would receive no health insurance coverage once laid-off; and approximately 13 employees received no pension benefits at all....

123. Upon information and believe, the UNION and VALEO funded the various attrition programs designed to lay-off mass numbers of VALEO employees with the funds that would have provided sub-pay and health insurance benefits to the aforementioned 183 employees.

124. As a result, some UNION members, including Plaintiffs, are receiving less valuable benefits than other less senior, but similarly situated, employees.

125. Upon information and belief, the attrition program schemes were designed to ensure that various LOCAL 509 UNION officials would, in fact, receive full pensions and all other pre-2005 retirement benefits as provided for under the CBA, including sub-pay and full health care.

(Compl. ¶¶ 121, 123-25.) Relying on *Ramey v. District 141, Int'l Assoc. of Machinists and Aerospace Workers*, 378 F.3d 269, 277 (2d Cir. 2004), Plaintiffs contend that the Union discriminated against some of the Valeo employees, including Plaintiffs, when they:

> arbitrarily split Tier II employees at an otherwise random point in the 1983 hiring year, making part of those employees eligible for the greater retirement package, including health care and sub-pay, and making the remaining Tier II and 1983 employees ineligible for same, despite the fact that, in some cases, only a day or two of seniority separated the employees who made it from those who did not. Plaintiffs have alleged that the line was drawn where it was in the 1983 hiring year to allow certain people, including Union officials, to "make" a full pension, with sub-pay and healthcare.

(Pls.' Mem. of Law, at 19.) The Union responds that the mere existence of differences under the terms of an agreement does not make them invalid, citing to *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953). They further argue that once Valeo announced it was shutting down the plant, the best the Union could do was what was called for in the MOA, and that the cutoff date was the last possible date that they could have been chosen. (*Id.*, at 18.)

In *Ramey*, the Second Circuit wrote, "'a union may not juggle the seniority roster for no reason other than to advance one group of employees over another' or to punish a disfavored group…." *Ramey*, 378 F.3d at 277 (quoting *Rakestraw v. United Airlines*, 981 F.2d 1524, 1535 (7th Cir 1992)), *accord Clergeau v. Local 1181, Amalgamated Transit Union*, No. 06-CV-05567 (DLI) (CLP), 2008 U.S. Dist. LEXIS 61089 (E.D.N.Y. Aug. 10, 2008) ("discrimination occurs when a union, without a legitimate purpose, favors some of its members at the expense of others."). In *Huffman*, the Supreme Court also observed that unions have a "statutory obligation to represent all members of an appropriate unit requires them to make an honest effort to serve the interests of all of those members, without hostility to any." *Huffman*, 345 U.S. at 337.

-21-

Here, the allegations are not only that different classes of employees were treated differently with respect to retirement and medical benefits, but that the Union did so with the intent of unfairly treating one group, which included a number of Union officials, better than another, which included Plaintiffs. Consequently, the Court determines that the Third cause of action against the Union states a plausible claim and may go forward.

**Fourth Cause of Action Against the Union**

In the Fourth cause of action against the Union, Plaintiffs claim that "the UNION, among other ways, failed to fairly represent said One Tenth members (a) by going forward with the ratification vote on an understanding that was contradictory to the one alleged to have been had by the UNION during negotiations, (b) by failing to return to negotiations to resolve the dispute, and (c) by failing to process the grievance through arbitration as a result of VALEO's breach of contract." (Compl. ¶ 129.) Plaintiffs argue that the Union was negligent in failing to include the cost of including benefits for the One-Tenth members and that, as a result, Valeo has "refused to recognize the One-Tenth members as receiving paid health care coverage as part of their retirement benefits." (Pls.' Mem. of Law, at 22.) Plaintiffs concede that, as promised, the Local Union grieved the issue, but the,

> IUE-CWA Automotive Conference Board refused to arbitrate the grievance, despite recognizing that the One Tenth members were erroneously excluded from the 2005 MOA full retirement package because the only real resolution would be to send the parties back to the negotiating table and the Conference Board wanted to avoid that result. Had Local 509 negotiated the issue immediately and, further, delayed the ratification vote until same was resolved, the One Tenth members might have been in a different position than they now are. But, further, the One Tenth members would have been in a different, and better, position in voting on the 2005 MOA, because they would have understood exactly where their retirement benefits stood with respect to paid health care coverage.

(*Id.*) The Union responds, citing *United Steel Workers of America v. Rawson*, 495 U.S. 362, 372-73 (1990), that mere negligence does not violate the duty of fair representation. (The Union's Mem. of Law, at 21.)

In that regard, the complaint does not only allege negligence, but also alleges the Union's failure to pursue the grievance, or return to the bargaining table, on the funding of the One-Tenth members. The Court is aware that the Union has submitted a lengthy letter, addressed to Dave Roehrig, President, IUE-CWA Local 509, concerning its reasoning. However, this letter is not part of the complaint, since it was not referenced in the complaint. Thus, Plaintiffs' allegations that the Union arbitrarily and unfairly treated the One-Tenth members is a plausible claim and may go forward.

## CONCLUSION

In light of the above, the Court grants Valeo's motion to dismiss only with regard to the Second cause of action against it (breach of contract), and denies the remaining portion of Valeo's motion (Docket No. 12) as well as the Union's motion (Docket No. 7) to dismiss in its entirety.

IT IS SO ORDERED.

Dated:   February 18, 2009
         Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge